### W. J. BAYNE v. THE STATE.

*No. 3366.   Decided October 18.*

1.   **Practice—Charge of the Court.**—To determine the sufficiency or correctness. of the charge of the court the same must be considered as a whole and each paragraph construed in connection with and in the light of the others.   Thus considered the charge· in this case (for which see the statement of the case) is *held*, though inartistic in phraseology, to be sufficient.

2.   **Same.**—Special instructions are properly refused when, as in this case, the general charge sufficiently presents all of the issues legitimately involved in the trial.

3.   **Theft—Evidence—Fact Case.**—In view of the proof on the trial the jury was. warranted in rejecting as unreasonable, improbable, and utterly false the defendant's. explanation of his possession of the stolen property.   See the statement of the case for· the substance of evidence *held* sufficient to support a conviction for theft.

APPEAL from the District Court of Johnson.   Tried below before Hon. J. M. Hall.

The conviction in this case was for the theft of a watch, over the value· of $20, and the penalty assessed by the verdict was a term of two years in. the penitentiary.

A. H. Hudgins, the owner of the alleged stolen watch, was the first witness for the State.   He testified, in substance, that in June, 1889, he was boarding at Sewell's Hotel, in Grandview, Texas, occupying room No. 3, up-stairs.   His watch was stolen from his said room early in that month, either on Sunday night or Monday morning.   At the time of the theft. the defendant was occupying room No. 2, which adjoined witness's room. Room No. 1 was occupied on Sunday night by a traveling man.

It was late on Monday morning when the witness entered the dining· room for breakfast.   As he took his seat at a table opposite and near the· table occupied by the defendant Mrs. Sewell spoke to him about being· late, and asked him what time it then was.   The witness then discovered that he had left his watch hanging in his room, and told Mrs. Sewell so· in the presence and hearing of the defendant.   The defendant almost. immediately left the dining room, his haste and manner for the moment, attracting the witness's attention.   An hour later the witness went to his. room and found that his watch had been stolen by somebody.   He at once· reported the theft to Mr. Sewell and offered a reward of $25 for the recovery of his watch, which was a gold timepiece worth $50.   The defend--

:ant knew that witness offered the said reward.   Witness recovered his watch in October, 1889, through Sheriff Boyd of Johnson County.

Cross-examined, the witness said that he did not know where the defendant went on leaving the dining room on the Monday morning in ·question.   If he went up-stairs or into witness's room, the witness did not know it.   He was standing at a point across the street from the hotel when witness, having finished his breakfast, passed out of the dining room.

A. J. Sewell, the proprietor of the hotel, was the next witness for the State.   He testified that Hudgins missed his watch on Monday morning ·early in June, 1889.   Defendant was moved into the room adjoining Hudgins's room on the previous evening and occupied that room the night preceding the morning on which the watch was missed.   A crippled transient man occupied the room adjoining the defendant's room.   When the said transient man left the hotel on the said Monday evening he was ,searched, but the watch was not found on him.   The proposition to search the parties who were in the hotel was made soon after the watch was missed.   Defendant then said that he would kill any man who attempted ·to search him, and he was not searched.   He continued to board at witness's house until he was arrested in October, 1889.   At that time he owed the witness a balance on a board bill.

On his cross-examination this witness's attention was called to a letter purporting to have been written by him to the defendant's brother in St. Louis.   That letter, he declared, was not written nor was it dictated by him.   It was written, he thought, by his son-in-law Crouch, upon his ,suggestion that he would like to have defendant's brother requested to pay the defendant's board bill.   Witness did not direct Crouch to write ·defendant's brother in his name proposing not to appear against the defendant on this trial if the bill was paid.   Mrs. Sewell, the next witness for the State, testified substantially as did her husband.

John H. Boyd, sheriff of Johnson County, testified for the State that he arrested the defendant in October, 1889, upon suspicion of having ·committed murder in California, but he proved not to be the man wanted. After arresting the defendant the witness secured and examined his valise. In the bottom of that valise he found Hudgins's gold watch wrapped in ,some rags.   Defendant claimed to own the valise and the clothes it contained.   The State closed.

The defense first read in evidence the depositions of four different parties, resident of St. Louis, certifying to the defendant's good reputation for honesty for several years prior to 1887, during which years they had known him intimately, one of the said witnesses during that time having had defendant employed in a confidential and responsible position. · T. H. Denton testified that defendant's reputation for honesty was good in Johnson County in 1888.

Sheriff Boyd, being recalled by the defense, testified that when he discovered the watch in defendant's valise he asked defendant if he did not know that the watch belonged to Hudgins. He replied that he did. Witness then asked him why he did not return it to Hudgins, if, as he stated in that connection, he found it in a rat hole. He replied that he first intended to do so, but concluded on reflection to keep it until he was ready to leave the hotel when he would deliver it to Hudgins, claim the reward of $25, and cause the said money to be paid to Sewell on his board bill.

J. L. Humphries was the next witness for the defense. He testified, in substance, that to his knowledge the defendant did not sleep up-stairs on the Sunday night preceding the Monday on which the watch was missed. The parties who occupied rooms up-stairs on that night were himself — the witness — Hudgins, and the crippled traveling man. Defendant was not moved from the room down-stairs to the room up-stairs until after the watch was missed. The traveling man was the only person searched for the watch after it was missed. Defendant declared that he would kill the man who attempted to search him.

The defendant next took the stand in his own behalf. He testified that he was occupying a down-stairs room at the time of the alleged theft, and was not moved up-stairs until after the watch was missed. He was in the dining room when Hudgins came to breakfast on Monday morning, and left that room before Hudgins did. He did not go up-stairs on leaving the dining room, nor until late in the day, long after the watch was missed, when he was called up-stairs to examine the room Mrs. Sewell proposed to give him in exchange for his room down-stairs. The witness continued to live at Sewell's Hotel from the time of the alleged theft until October 10, 1889, when he was arrested upon a false charge of murder in California. Two or three days before that arrest the witness helped Sewell's sons set some rat traps. One of those traps he set at the head of the stairs, in the hall, at which point a board having been removed left an opening between the upper floor and the ceiling, exposing the ends of the joists. Into this opening, through which he had often observed the passage of rats, the witness thrust his hand, and drew forth what he therein discovered — a rag bundle containing Hudgins's watch. He decided to retain the watch until he could claim the reward offered by Hudgins, and accordingly took it to his room and placed it in his valise, where the sheriff found it. Immediately after putting the watch away the witness went to Mr. Sewell at a livery stable, to tell him of his discovery and to get him to go with him, witness, to Hudgins, deliver the watch, and claim the reward. Sewell, however, was called off, and went to Itasca before witness could tell him, and did not return to Grandview until after the arrest of witness. The witness concluded by declaring that he did not

take the watch out of Hudgins's room, but that he found it in the manner stated.

J. L. Crouch, the son-in-law, and at the time of the theft and afterwards the employe, of Sewell, testified that he wrote the letter copied below. Sewell suggested to witness the writing of this letter, but did not dictate it. Witness was not certain, but thought he handed the letter to Sewell to read before mailing it. The letter reads as follows:

"GRANDVIEW, TEXAS, 3—9, 1890.

" *Mr. Bain, St. Louis, Mo.:*

"DEAR SIR—I have been trying to find your address for some time, but could not for certain, so I will write in care of Mr. Honley and see if I can hear from you. What I want to say is this: Your brother, W. J. Bain, is in jail waiting trial for the stealing of a watch at my hotel. My wife and I are the main witnesses in the (case), and as sure as he has his trial and we appear against him he is apt to go to the pen. He owes me $78.50 for board. If you can fix it up so I can get my money we will not appear against him, but we will both go off until after the trial. Let me hear from you at once in regard to this.

"Yours, truly,

"A. J. SEWELL,
" Grandview, Texas."

The charge of the court reads as follows:

"1. The defendant is charged by indictment with the theft of property over the value of $20. To this charge the defendant, W. J. Bayne, has pleaded not guilty, and under this plea the law presumes the defendant innocent until his guilt is established by legal evidence beyond a reasonable doubt.

"2. You are instructed that if you believe beyond a reasonable doubt that the defendant, in the county of Johnson, in the State of Texas, about the time alleged in the indictment, fraudulently took from the possession of A. H. Hudgins the property described in the indictment, and that said property was of the value of $20 or over, and that said property was taken without the consent of said A. H. Hudgins, and with the intent to deprive the said A. H. Hudgins of the value of the same, and with intent to appropriate the same to the use and benefit of him, the defendant, then you will find him guilty as charged, and you will assess his punishment at confinement in the penitentiary for any time at not less than two years and not more than ten years, and so say by your verdict.

"3. The court further instructs you that if you believe from the evidence that the defendant did not take the property described in the indictment from the possession of the said Hudgins, but shall believe from the evidence that the defendant found the same, then you are instructed that you can not find the defendant guilty as charged unless you believe

from the evidence beyond a reasonable doubt that the defendant, at the time he found it, fraudulently took it with the intent at the time to deprive the owner of the value of the said property, and that the same was of the value of $20, and with the intent to appropriate it to the use and benefit of him, the defendent, then you will find the defendant guilty as charged, and you will assess his punishment as explained in the paragraph next preceding this, and so say by your verdict.

"4.   The court further instructs you that if you believe from the evidence that the defendant did not fraudulently take said property from the possession of A. H. Hudgins as hereinbefore explained, but that he found the same, and that he did not intend at the time he found it, if he did so, to deprive the owner of the value of the same and to appropriate it to the use and benefit of him, the defendant, but kept it to secure the reward offered to any one who should return the same to the owner, or kept it intending to return it to the owner at some future time, then you will acquit him, although you may believe from the evidence that he afterwards formed the intent to fraudulently deprive the owner of the value of the same and to appropriate it to the use of him, the defendant.

"5.   If the defendant gave a reasonable account of how he acquired possession of said property when his possession of the same was first questioned, then before you can convict him you must believe from the evidence beyond a reasonable doubt that said explanation, if any, is not true but false, and unless you so believe you will acquit defendant.

"6.   You are further instructed that to warrant a conviction of a crime on circumstantial evidence every fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt.   All the facts, that is the necessary facts to the conclusion, must be consistent with each other and with the main fact sought to be proved; and the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing a reasonable and moral certainty that the defendant is guilty as charged; and unless you so believe from the evidence you will acquit him, and so say by your verdict.

"7.   If, under the evidence and instructions given in this charge, you have a reasonable doubt of the guilt of the defendant, then you will find him not guilty, and so say by your verdict.

"8.   You are the sole judges of the facts proved and of the credibility of the witnesses, but you will be governed by this charge as to the law of the case."

The defense excepted to the third and fourth paragraphs of the above charge upon the grounds, as stated in the bill of exceptions:

"1.   Because by said instructions the jury was required to believe from the evidence that the defendant did not take the watch in controversy

from Hudgins's possession before they were permitted to inquire whether he found it.

"2. Because said instructions shifted the burden of proof off the State, and on the defendant, to prove that he did not take said property with a fraudulent intention before they could acquit him."

*Crane & Ramsey,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—When considered as a whole the charge of the court is not fairly subject to the animadversions and criticisms made by defendant's counsel upon the paragraphs complained of. The charge is not obnoxious to the same objections as were held good to the charge in Moore v. The State, 28 Texas Court of Appeals, 377. There could be no mistake on the part of the jury in this case as to what was necessary to be ascertained and found by them before they would or could find the defendant guilty, provided they took and considered, as was their duty, the whole of the charge. The paragraphs complained of are perhaps inartistic in construction, but read in the proper connection of the antecendent instructions they can not mislead, and only present, awkwardly though it may be, legitimate issues arising on the facts.

Nor did the court err in refusing defendant's special requested instructions. As given the charge fully submitted the legitimate issues of the case.

After the watch had been discovered in and taken from his valise, which was four months after it had been stolen, the defendant, in attempting to make an explanation, claimed that he had found the watch in a rat hole, and that, though he knew it was Hudgins's property and that it had been stolen, he also knew that a reward had been offered for it; that search had been made for it on the day of the theft, four months before, and that he had at that time refused to be searched; and although he claims to have found the watch more than a week prior to the time it was found in his valise—notwithstanding all these facts, he, according to his own statement, quietly conceals the watch in his valise—says nothing about it to any one, and claims that his innocent intention was to keep it until he was ready to leave the hotel, and that then he would give it to Hudgins and claim the reward, and with the reward settle his hotel bill. This explanation, in view of the other evidence in the case, is unreasonable and improbable, and the jury had every reason to believe it utterly false.

But it is said that this is a case purely of possession of recently stolen property, and that there is no conscious and distinct assertion by defendant of ownership or claim to the property proved, and that the case is

wanting in that essential element necessary to a conviction in such a case. In support of this proposition we are cited to Lehman's case, 18 Texas Court of Appeals, 174, and Robinson's case, 22 Texas Court of Appeals, 690. The cases are entirely dissimilar. In neither of the former cases were the parties found in possession of the property exclusively, nor claiming it in any manner. In this case the defendant was found in the actual and exclusive care, custody, and control of the property, and had it concealed in his valise. What more positive proof of assertion of ownership could be demanded, if the other facts in connection with this fact warranted the conclusion, as we think they did, that he had stolen the watch?

We have found no reversible error in the transcript, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.